DAVID RICE et al. *v.* C. F. HARRISSON et al.

**Voluntary Conveyance to Wife by an Insolvent — Void as to Creditors.**

> An insolvent cannot make a voluntary conveyance to his wife to defeat
> creditors, and where a bill has been filed by his creditors against him
> and his wife to subject land sold by him to her for a debt alleged to
> be due her and it is not satisfactorily shown that he owed her enough
> to authorize the devotion of the property conveyed to the payment of the
> debt, a decree dismissing complainant's bill will be reversed.[1]

Bill in chancery by appellants, against appellees to subject certain lands described in the bill to the payment of their debts.

The bill alleges that complainants are creditors of C. F. Harrisson, being the assignees of a certain judgment, described in the bill, against him and that at the time of the assignment said Harrisson was a merchant in the town of Edwards, Miss., and was possessed of considerable property, consisting of a storehouse and

---

[1]

On the trial of a plea in abatement in an attachment suit, where the evidence shows that defendant's wife was placed in possession of part of the attached personal property under a parol sale by the husband, it is error for the court to instruct the jury for the defendant that the sale to his wife was not fraudulent if the debt was a *bona fide* debt, and the sale in good faith, without adding that a parol sale to his wife was void as to creditors, when the attachment is by a creditor of the defendant. Berkson Bros. et al. *v.* Max Kahn, 1 Miss. Dec. 179, and cases cited in notes, citing Donoghue et al. *v.* Shull, 85 Miss. 404; 37 So. 817; and Green et al., *v.* Weems, 85 Miss. 566; 38 So. 551; Graham *v.* Morgan, 83 Miss. 601; 35 So. 874; Underwood *v.* Ainsworth, 72 Miss. 328; 18 So. 379; Davis *v.* Williams, 73 Miss. 708; 19 So. 352; Walker *v.* Marseilles, 70 Miss. 283; 12 So. 211; Watkins *v.* Duval, 69 Miss. 364; 13 So. 727; Snider *v.* Woodenware Co., 74 Miss. 353; 20 So. 836; and others.

A creditors' bill was filed, charging fraudulent conveyances from husband to wife; the husband purchased and placed at the mill of the wife certain machinery under circumstances which did not vest title in her. *Held,* that a decree rendered against the wife as a debtor of her husband was void. Tyler et al. *v.* Wheeler et al., 1 Miss. Dec. 251, and cases cited in note.

Equity considers results rather than the means of obtaining them. A debtor may, in good faith, prefer his wife as a creditor, and if to accomplish this he has his wife to institute a useless chancery suit on the ground that her money paid for certain land, a commissioner's deed to her, followed by a deed of the husband to one, though in secret trust for her, gives her such

lot in Edwards and a stock of goods, and besides the debt to complainant he owed a number of other debts, and being so situated in April, 1873, and thereafter, for the purpose of defrauding his creditors, he conveyed his real and personal property to sundry persons, and in consideration therefor he purchased real estate, the entire consideration being the property of C. F. Harrisson; for the purpose of placing it beyond the reach of his creditors; that to carry out the scheme, he, in October, 1873, took a deed to certain land, described, from O. P. Barrett, of 754 89-100 acres, the entire consideration being the property of C. F. Harrisson; * * * that said C. F. Harrisson bought 279 acres more from said Barrett at the same time to further carry out his fraudulent designs; that the title to this land was also taken in his wife's name, but the entire consideration was property of said C. F. Harrisson, and all of it was done to defraud his creditors and to hinder and delay them in the collection of their debts. The consideration of the larger tract of land was $2,700, recited to have been paid by Mrs. Barrett, and a deed to two lots in Edwards, valued at from $3,500 to $4,500.

Mrs. Harrisson answered the bill, admitting that C. F. Harrisson was a merchant at Edwards. She denied that C. F. Harrisson was at the time complainants' debt accrued, owner of considerable property, a stock of goods in Edwards and several lots, and at the time the land was bought by her, owed a large number of debts,

title as will prevail over a judgment subsequently rendered against him. Efforts after such acquisition of title to place the land beyond the reach of creditors, however suggestive as evidence of fraud, do not make the land subject to the judgment. Savage v. Dowd, 54 Miss. 728.

Where a husband appropriates the means of his wife with or without her consent, he becomes her debtor, and the indebtedness will constitute a valuable consideration for a conveyance of property to her. Owing to the relationship of the parties, such conveyance, if assailed by creditors will be closely scrutinized, but its validity will be tested by the same principles as are applicable to conveyances between strangers. Kaufman v. Whitney, 50 Miss. 103.

The proviso to article 23, p. 336, Code 1857, that "any deed from the husband to the wife for her use shall be void as against his creditors," applies only to voluntary conveyances. Besides, this proviso was repealed by section 6 of the Act of 1867 (Laws, p. 725). Though insolvent, the husband may, by conveyance made in good faith, prefer his wife as a creditor, and a conveyance to her direct will be sustained in equity. Kaufman v. Whitney, 50 Miss. 103.

and being so situated at divers times, conveyed said property to different persons for the purpose of defrauding his creditors. Denied that the land was purchased from Barrett with property belonging to C. F. Harrisson, and avers that she bought it with her own property. Denied that the said property really belonged to Harrisson and held in her name. Denied that there was any fraud in the transactions and avers that it was fair and honest and that the property is hers; denies that said Harrisson was insolvent. C. F. Harrisson answered the bill, denying the fraud charged in the bill and adopts the answer of his wife.

From a final decree holding that part of the land described in the bill had been conveyed by C. F. Harrisson to his wife to defraud his creditors and directing it to be sold, in default of the payments of the debts found to be due and not the other lands alleged to be so conveyed, complainants appeal.

Appealed from Chancery Court, Hinds county, second district, E. G. Peyton, Chancellor.

Reversed and remanded, April 30, 1883.

*Attorneys for appellants, E. E. Baldwin, and J. & J. M. Shelton.*

*Attorney for appellees, M. Dabney.*

Brief of Baldwin, and Shelton & Shelton:

In this case, the evidence shows conclusively that Harrisson, while insolvent, and owing various debts, purchased in the name of his wife two plantations, for the first of which he paid by a conveyance of two lots in Edwards, belonging to his wife, and a stock of goods, belonging to himself (the lots being valued at $3,300, and the goods at $2,700 in the trade), and the second of which was paid for by the conveyance of a lot by Wilkins and wife, to Barrett, the same having been purchased by Harrisson, from Mrs. Amaker, who was the owner thereof, but had never received a deed thereto from Wilkins.

The second of these plantations has been subjected to the payment of Harrisson's debts by the decree, and is no longer in the case. The assignment of errors sets out that the court erred in not

also subjecting the first plantation also to payment of his debts, at least to the amount of property of Harrisson, which went into it, viz: $2,700, or to the amount of 27-60 of the value of it.

There can be no doubt whatever that a purchase, made partly with the husband's means, and partly with that of the wife, when the conveyance is taken in the name of the wife, is void as to the creditors of the husband, to the extent of the means of the husband used therein, and may be subjected to his debts to that amount. Apple v. Ganong, 47 Miss. 199.

Then the decree of the court should have subjected this plantation to the extent of any means of Harrisson's which went into it. Let us see how much, if any of his means, were used in the purchase. He himself admits, and the transaction as made at the time shows, that his stock of goods, valued at $2,700, formed that much of the purchase money. The only defense made by Harrisson to evade this, is an attempt on his part to prove by his own deposition that he was indebted to his wife. In this, however, he entangles himself so inextricably that it becomes very evident that no credit is to be given to his testimony whatever. He states that his wife had $3,500, of which he borrowed $3,000 to put into his business; that he paid for the lots which were purchased in his name from Wilkins by furnishing Wilkins with merchandise to the amount of $1,800; on these lots grew up a storehouse and residence, so that the value of the lots and buildings at the time when they were sold to Barrett in part payment of his plantation was $4,000. It does not appear directly where the money came from to build these buildings, but it could not have come from Mrs. Harrisson, as her husband had borrowed all, or nearly all, her funds, by his own showing, and did not repay her until the sale to Barrett. Yet, after all this, after he had put $4,000 of houses and lots in her name, he was still owing her $3,000 originally borrowed, and more than that, claims that the debt was augmented by the accrued rents of seven years of the houses and lots so conveyed by Wilkins to his wife, and paid for by him to the amount of $1,050, and that when he made the purchase of the Barrett place, the $2,700 worth of his goods which went into it was a credit on the $4,600 which he then owed her. This could not well be, when the original loan (if any ever existed), had been paid in real estate, and under the statute, as it then existed, no such claim as one for seven years' rent of a wife's prop-

erty could be valid as against her husband, but would be restricted to one year's rent.

It is evident, then, that an attempt is made on the part of the Harrissons to revive an old claim of the wife's against her husband, which, if it ever had any existence whatever, had years before been extinguished, and make it to double duty, by covering the stock of goods as well as the real estate which originally was covered by and settled it.

This being the case, we insist that the final decree was erroneous in not granting the relief prayed for by the complainants against the larger plantation, and subjecting it to the payment of Harrisson's debts to the extent of the proportion which the $2,700 of Harrison's which went into it bears to the whole purchase price of the property, $6,000, or 27-60th of its value.

Brief of M. Dabney:

The sole question for consideration in this case is whether C. T. Harrisson bought the 753-acre Barrett place with his money or property to defraud his creditors. There were no judgment creditors, and no suits pending. His whole mercantile indebtedness was nominal, probably $600, at that time, part of which I believe was contracted about that time.

Barrett place was bought in the name of N. J. Harrisson; the consideration was lots 8 and 9, Sqr. E. Pub. Sqr., Edwards, variously valued at from $3,500 to $4,500, and $2,700 worth of goods. The lots 8 and 9 were Mrs. Harrisson's and had been for years. The goods had been C. T. Harrisson's. He testifies that he was indebted to his wife and let her have the goods as a credit on his indebtedness and that she used them in paying for the land. There is no other testimony or evidence in conflict with his.

The chancellor believed him. This court will not reverse on a question of fact unless error is apparent.

Harrisson owned, in his own name, the Yeiser place, for which he was to pay $8,000. He had paid $1,500 in advance and made subsequent payments amounting to over $6,000 in all during the ensuing seven or eight years. All this time (from 1872, when he bought the Yeiser place), till a few years ago, the Yeiser place and mules were subject to execution. The deed was of record. Yet these few creditors seemed to be ignorant of the fact until disasters fell upon Harrisson's efforts to make money, when the Yeiser

place was sold for the balance of the purchase money due on it with interest, amounting to between $3,000 and $4,000.

Why would he buy the Yeiser place and improve it, if he was endeavoring to put his property in his wife's name? The Yeiser place was in his name.

The case involves simply a matter of fact. Harrisson alone has testified as to the facts upon which the case turns, and under the many cases decided by this court the views of the chancellor will be taken as to the facts, unless manifestly wrong.

OPINION.—CAMPBELL, C. J.:

A careful examination of this case has resulted in the conviction that Harrisson, the debtor, had an interest in the larger tract of land purchased of O. P. Barrett, which his creditors are entitled to reach for the satisfaction of their demands.

It is indisputable that his stock of merchandise, valued at $2,700, went into the purchase of the land, and it is not satisfactorily shown that Harrisson owed his wife enough to authorize the devotion of this property to her payment. It is true that he testifies that his indebtedness to her was sufficient for this, but there are other facts established by him which do not consist with this. His wife had $3,500, he says, and that sum was insufficient to purchase the lots and mules and other things which he shows to have been hers afterwards. The facts of the case seem to vindicate Mr. Harrisson from the charge of intentional fraud, but as they appear to us, they do show that he invested $2,700 in the Barrett land, in 1873, which he had no right to treat as his wife's, as against his creditors. It may be that further investigation will disclose the right of the wife to have been greater than it now appears to us, and we will grant an opportunity for such further investigation.

*Decree reversed* as to the 754 80-100 acres of land, and cause remanded with leave to both parties to take testimony: